Alton **COATS** and wife, Virginia Coats,
Plaintiffs,

v.

**UNITED STATES** of America,
Defendant.

Civ. No. 4435.

United States District Court
E. D. Texas,
Tyler Division.

July 11, 1966.

---

Allen E. Pye, J. Robert Dobbs, Jr., Tyler, Tex., for plaintiffs.

Robert L. Waters, U. S. Dept. of Justice, Fort Worth, Tex., Wm. Wayne Justice, U. S. Atty., Tyler, Tex., for defendant.

## OPINION

SHEEHY, Chief Judge.

This suit involves a claim for refund of certain deficiencies assessed by the Internal Revenue Service against the Plaintiffs in connection with their reported income tax in the year 1958. The material facts established by the stipulations and as found from the testimony and documents introduced at the trial of this cause are as follows.

Alton and Virginia Coats are husband and wife and reside in Gladewater, Texas.[1] Since 1945, Alton Coats has been in the business of drilling and producing oil and gas properties. Since 1952, he has conducted his business in the form of a sole proprietorship under the name of Coats Drilling Company. The Plaintiff, Alton Coats used the accrual method of accounting in reporting his income on a calendar year basis. Plaintiffs filed a timely joint individual income tax return for the year 1958 and paid the tax shown due thereon. On May 25, 1962, a deficiency in income taxes for the year 1958 in the amount of $21,545.15, a fraud penalty under the provisions of 26 U.S.C.A. (1958 ed.) Sec. 6653 in the amount of $10,772.58, and interest in the amount of $4,021.27 were assessed against the Plaintiffs by the I.R.S. On June 5, 1962, the Plaintiffs paid this assessment to the District Director of Internal Revenue at Dallas, Texas. On May 28, 1964, the Plaintiffs filed with the District Director a claim for refund of income taxes for the year 1958 along with the penalty and interest in the amount of $36,339.00, or such amount as may be legally due. The District Director notified the Plaintiffs by certified mail on May 7, 1965, that their claim for refund had been disallowed. Thereafter, on June 15, 1965, this action was brought by the Plaintiffs to recover the amount of the taxes and penalties with interest, which they allege were erroneously and illegally assessed and collected for the year 1958.

Prior to trial, it was stipulated that the issues set forth in the Plaintiffs' Complaint in Paragraphs IV, VII, VIII, IX and X have been disposed of by agreement between the parties and are no longer in issue in this case. Therefore, the Plaintiffs' tax liability concerning three separate transactions are the only issues remaining in this case. While it has been stipulated that as to one of these three items the deficiency was properly assessed, the other two

---

1. Virginia Coats is a party to this litigation solely because she filed a joint income tax return with her husband, Alton Coats, for the year 1958.

transactions require a determination of whether in assessing a deficiency for the year 1958 the District Director was incorrect in attributing as income or disallowing as a deduction certain amounts in connection with each particular transaction. In addition, the question is presented whether it has been established by clear and convincing evidence that Alton Coats knowingly and willfully filed a fraudulent income tax return relative to any or all of these three items with the intent to evade taxation. Each of these issues will be discussed separately.

The first item in question is the dry hole contribution in the amount of $7,500.00 paid by Shell Oil Company to John Coats, the father of the Plaintiff, Alton Coats, in connection with the drilling of the O. L. Lively Well No. 1. The Plaintiffs contend that the Defendant was erroneous in determining that the Shell dry hole payment was income to the Plaintiffs or should have been applied to reduce the drilling and development cost of the Lively well, which the Plaintiffs listed as a deduction in 1958. The Plaintiffs alternatively assert that if it is properly considered income, it should be attributed to the year 1959, the year it was actually paid.

The credible evidence introduced at the trial of this cause establishes that on November 25, 1958, Alton Coats requested by letter to W. W. Welch of Shell Oil Company that Shell agree to pay a dry hole contribution with respect to the proposed Lively No. 1 Well. Three days later, on November 28, the dry hole payment was authorized by Shell Oil. On December 5, 1958, a dry hole letter committing Shell to pay the $1.25 per foot, or a maximum of $7,500.00 in the event the Lively well was not a commercial producer, was addressed and mailed to John Coats, who admittedly owned no interest in the property involved. Pursuant to this agreement, John Coats received a check in the amount of $7,500.00 on January 5, 1959. Plaintiffs neither reported as income this amount paid by Shell to John Coats, nor did Alton Coats reduce his cost of drill-

ing the O. L. Lively well by such amount. The District Director determined that the dry hole letter would not have been sent to John Coats without the consent and instruction of Alton Coats, that Alton Coats had caused the Shell payment to which he was entitled to be diverted to his father, and, therefore, on the Plaintiffs' 1958 income tax return, said payment should have been treated as income to Alton Coats or should have been used to reduce the drilling and development costs of the Lively well, and a deficiency was assessed accordingly.

In an action such as this to recover taxes assessed and paid, the findings of the Commissioner are presumptively correct, and the burden is on the taxpayer to establish that the assessment was erroneous and the amount of refund to which he is entitled. Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623 (1935) and Carter v. Campbell, 264 F.2d 930, 938 (5 Cir. 1959). Under the evidence in this case, the Plaintiffs have failed to discharge this burden. They have not presented any evidence which satisfactorily demonstrates that the District Director's determination was incorrect. It has not been shown that John Coats ever contacted any representative of Shell Oil or performed any of the conditions contained in the dry hole agreement, and admittedly he owns no interest whatsoever in the Lively No. 1 Well. The real key to the question of why Shell paid the dry hole contribution to John Coats instead of to Alton Coats lies with Mr. W. W. Welch, the Manager of the East Texas Land Division for Shell Oil Company, to whom Alton Coats applied for the dry hole contribution and who later signed the letter promising the payment to John Coats. The Plaintiffs did not choose to produce Mr. Welch as a witness at the trial of this case. Under these circumstances, it is entirely proper for the Court to presume that the testimony of Mr. Welch would not be favorable to the Plaintiffs on this question. United States v. Roberson, 233 F.2d 517, 519 (5 Cir. 1956). The Plaintiffs have

wholly failed to prove by a preponderance of the evidence that the $7,500.00 dry hole payment was not diverted by Alton Coats to his father. Accordingly, the District Director's determination in this respect will not be overturned.

■ Plaintiffs' alternative contention that the $7,500.00 dry hole payment was not made until January 5, 1959, and, therefore, not taxable to them for the year 1958, is also without merit. It has been stipulated that the Plaintiff, Alton Coats, used the accrual method of accounting in reporting his income on a calendar year basis. All events fixing the Plaintiffs' right in regards to the dry hole money occurred during the tax year 1958. Drilling was commenced on the Lively No. 1 Well in December of 1958, and the well was finally plugged December 20, 1958. Therefore, under the applicable provisions of the Internal Revenue Code, the amounts received under the dry hole agreement were properly attributable to the year 1958 for income tax purposes. 26 U.S.C.A. Sec. 446, Sec. 451, and Sec. 461; See also, Treasury Regulations Sec. 1.451–1; Sec. 1.461–1.

■ Attention is next directed to the Mustang Drilling Company transaction. In their income tax return for the year 1958, Plaintiffs deducted the sum of $21,872.83 paid to Mustang Drilling Corporation as part of the drilling costs of the O. L. Lively Well No. 1. In determining the deficiency assessment, the District Director reduced the deduction allowed by the amount of $7,492.50, which is the sum paid by Mustang to John Coats allegedly as a commission for securing the drilling contract for Mustang. The District Director determined that John Coats did nothing toward securing for Mustang the drilling contract on the Lively well, and that Alton Coats had caused the payment to be made to his father and that such sum was, therefore, not deductible as a necessary drilling and development expense in connection with the Lively Well No. 1.

As stated above, the burden is upon the Plaintiffs to present evidence which sat-isfactorily demonstrates that the District Director's decision was erroneous. Helvering v. Taylor, supra; Carter v. Campbell, supra. The Plaintiffs again have failed to meet this burden. Alton Coats negotiated the drilling contract for the Lively well with Charles Smith, bookkeeper for Mustang. Smith had not previously been in contact with John Coats, nor was he informed by anyone else that John Coats had approached Mustang about the possibility of drilling the Lively well for Alton Coats. In negotiating the contract, an agreement was reached whereby Mustang would drill the Lively well for $2.25 per foot. After this price agreement was reached, Alton Coats requested that Mr. Smith increase the contract price by $1.25 per foot and further instructed that Mustang pay the additional $1.25 per foot as a commission to John Coats. Mr. Smith, pursuant to the instructions of Alton Coats, prepared the contract and a letter addressed to John Coats whereby Mustang agreed to pay John Coats a commission of $1.25 per foot on the Lively well. The contract was signed by Alton Coats, at which time Smith turned the letter over to Alton Coats for delivery to John Coats. John Coats did not participate in the negotiations of this contract, nor did he have any connection with securing or performing the agreement between Alton Coats and Mustang Drilling Corporation. Accordingly, the District Director's determination and treatment of the so called "commission" payment in the amount of $7,492.50 will be sustained.

The final transaction in issue in this case involves a $3,800.00 payment by Alton Coats to Allen Sanders, which was shown by the Plaintiffs on their 1958 income tax returns as a part of the drilling and development costs of the O. L. Lively No. 1 Well. In assessing the deficiency, the District Director concluded that this sum was actually paid by Alton Coats for work done by Sanders on a farm owned by John Coats. Plaintiffs admit that the District Director's conclusion was correct in this respect and do not dispute the deficiency as-

sessment insofar as it is based on this item. The only question remaining, therefore, is whether Alton Coats willfully and knowingly falsely reported on his 1958 tax return this and the other two items previously discussed with the intent to evade taxation.

■ Turning to the question of fraud, it is clear that the Commissioner has the burden of proving that the taxpayer was guilty of fraud. 26 U.S.C.A. Sec. 7454(a). The test of fraud is a foreboding one. The burden is upon the Commissioner to prove affirmatively by clear and convincing evidence actual and intentional wrongdoing on the part of the taxpayer with a specific intent to evade the tax. Eagle v. Commissioner of Internal Revenue, 242 F.2d 635, 637 (5 Cir. 1957) and Mitchell v. Commissioner of Internal Revenue, 118 F.2d 308, 310 (5 Cir. 1941). As was stated in Carter v. Campbell, "The line between the fraudulent and the careless, between the evil and the negligent, is shadowy and elusive. The case must cross 'that narrow borderline which persuades the judicial mind that clear and convincing evidence has established fraud with specific intent to evade the tax' ". 264 F.2d 930, at 941 (5 Cir. 1959). The Government has failed to produce sufficient evidence to carry this difficult burden in regard to both the Shell dry hole payment and the Allen Sanders transaction.

In connection with the $3,800.00 payment to Sanders, the evidence produced by the government fails to establish that Alton Coats was responsible or even had knowledge that the payment to Sanders was charged as part of the costs of the Lively well or that it had been deducted on his 1958 income tax return. The Court concludes that the evidence fails to show the Plaintiffs guilty of fraud with respect to this item.

With regard to the Shell dry hole contribution, the Defendant did not show by clear and convincing evidence that Alton Coats caused the contribution to be paid to John Coats with the intent to evade taxation. In connection with this issue, the testimony of Mr. W. W. Welch again would be the key factor, and the Government did not choose to call Welch as a witness in its attempt to establish fraud on the part of the taxpayer. Without affirmative evidence that Welch was directed by Alton Coats to direct the dry hole commitment letter to John Coats, fraudulent intent cannot be established with respect to this transaction. The Government's failure to call Welch to testify results in the presumption that his testimony would be unfavorable to the Government's position. United States v. Roberson, supra. Therefore, with respect to this item, the Court finds that the evidence fails to show that the Plaintiffs were guilty of fraud with the intent to evade taxation.

However, the Court is of the opinion and finds that the evidence adduced at the trial of this case clearly and convincingly establishes that Alton Coats was guilty of fraud with the intent to evade taxes on his 1958 return with regard to the alleged commission paid to John Coats by Mustang Drilling Corporation. Direct evidence of the fraudulent intent is seldom available, of course. However, such intent is clearly and convincingly established by a clear inference drawn from the actions of Alton Coats in this case.

Alton Coats had full knowledge of and instigated this transaction. The drilling contract and the commission letter were prepared according to his instructions. He knew John Coats had done nothing to earn the commission. Furthermore, the amount of the commission was substantial and entirely disproportionate with respect to the contract price, and, in addition, Alton Coats admittedly would not have paid so high a commission to anyone other than his father. The Court also finds persuasive the fact that this transaction is a carbon copy of transactions which Alton Coats negotiated and consummated with other drilling companies during the years 1956 and 1957. Alton Coats' intention to fraudulently divert sums of money to his father un-

der the guise of a fictitious commission is clearly established by the pattern of similar agreements entered into in the years prior to the tax year now in question. While Alton Coats' intention to help his father may be praiseworthy, he knowingly and willfully chose a method which resulted in a fraudulent reduction in his personal taxes. The Government has proven by clear and convincing evidence that the falsity in the tax return for 1958 were known and deliberate by the Taxpayer, and, therefore, the Court finds that Plaintiffs willfully and knowingly filed a fraudulent income tax return for the year 1958.

 The Internal Revenue Code provides that if any part of a deficiency is due to fraud with the intent to evade tax, the fraud penalty may be imposed. 26 U.S.C.A., Sec. 6653(b). A finding of fraud as to any part of the deficiency for any one year requires the imposition of the penalty as to the entire deficiency for that year. Ginsberg's Estate v. Commissioner of Internal Revenue, 271 F.2d 511 (5 Cir. 1959); Toledano v. Commissioner of Internal Revenue, 362 F.2d 243 (5 Cir., June 13, 1966). Thus, since Alton Coats was guilty of fraud with respect to the Mustang commission item, the I.R.S. had the authority to assess the fraud penalty provided for by Sec. 6653 against all of the deficiency assessment that was properly assessed.

In light of the above findings and conclusions made and reached, it follows that the Plaintiffs are not entitled to recover any portion of the deficiency assessment, the fraud penalty assessed and interest thereon which are attributable to the three items contested in this case and disposed of above. As above indicated, the parties have stipulated that the issues raised by Paragraphs IV, VII, VIII, IX and X of Plaintiffs' Complaint have been settled, however the Court has not been advised as to the terms of such settlement. The parties should, within thirty days from the date of this Opinion, file as a part of the record in this case the terms of said settlement and the amount of the recovery, if any, Plaintiffs are entitled to make by virtue of said settlement, and if the terms of the settlement are such that the Plaintiffs are entitled to make a recovery because thereof, a form of judgment allowing Plaintiffs such recovery should be presented. In the event the terms of the settlement are such that the Plaintiffs are not entitled to make a recovery against the Defendant by virtue of said settlement, a form of judgment denying Plaintiffs a recovery in this action should be presented.

This Opinion, together with the stipulation to be filed by the parties as directed in the next preceding paragraph, will constitute the Findings of Fact and Conclusions of Law in this cause.