Louis B. Libby and Virginia Libby v. Commissioner.
Libby v. Comm'r
Docket No. 1357-68.
United States Tax Court
T.C. Memo 1969-184; 1969 Tax Ct. Memo LEXIS 113; 28 T.C.M. (CCH) 915; T.C.M. (RIA) 69184; September 8, 1969, Filed Vincent F. Kilborn, 154 St. Louis St., P.O. Box 2565, Mobile, Ala., for the petitioners. Robert W. Goodman, for the respondent. DAWSON
*113 Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following income tax deficiencies and additions to tax against the petitioners: Year
Deficiency
Addition to TaxSec. 6653(b) [1]
1959
$ 98.43
$ 49.21
1960
2,768.32
1,384.16
1961
3,374.13
1,687.06
1962
7,153.44
3,576.72
1963
4,177.01
2,088.50
1964
1,849.97
924.98
*114 The issues for decision are: (1) Whether petitioners understated their taxable income for the years 1959 through 1964 resulting in deficiencies in their Federal income taxes for those years; (2) whether any part of the underpayment for each of the years 1959 through 1964 was due to fraud with intent to evade tax; and (3) whether the assessment of any deficiencies for the years 1959 and 1960 is barred by the statute of limitations. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Louis B. Libby and Virginia Whatley Burnette Libby (herein called petitioners) are husband and wife whose legal residence was Saraland, Alabama, at the time they filed their petition in this case. Petitioners filed their joint Federal income tax returns for the years 1959 through 1964 with the district director of internal revenue at Birmingham, Alabama. Virginia Libby (herein referred to as Virginia) filed Federal income tax returns for the years 1963 and 1964 in the name of her minor son, Danny *115 Ray Burnette, which she signed as his legal custodian. Hazel Hamm Whatley, the mother of Virginia, married Randolph D. Whatley, by whom she had three children before 1932. Their daughter, Mary, born in 1930, was afflicted and remains so. In 1932 the Whatleys moved to Prattville, Alabama, where Randolph worked on the plantation of a cattle raiser, Grover Cleveland Passmore. The Whatleys lived in a tenant house on Passmore's land. Passmore was married but childless. Virginia was born in Passmore's plantation house 916 near Prattville, Alabama, on March 30, 1934, legally the daughter of Randolph and Hazel Whatley. [2] She was known as Virginia Whatley. Over the years there was a close relationship, affection or friendship between Passmore and Virginia which lasted until his death on December 3, 1964, at the age of 79. [3] He gave some money to Virginia prior to and during the years 1960 through 1964. *116 In 1948, Virginia married James Bond, an itinerant construction worker. They lived in several places until they were divorced in 1952. In that year Virginia, James and her mother and sister Mary moved to Saraland, Alabama, a town immediately north of Mobile. In 1954, Virginia married Oscar Lamar Burnette. They had one son, Danny Ray Burnette, who was born December 20, 1954. Lamar Burnette was a roofer while he and Virginia were married. They lived in several places from 1954 until they were divorced in 1958, namely, New Orleans, Montgomery, Saraland and Goldsboro, North Carolina. From time to time after their divorce and during the years 1959 through 1964, Burnette sent Virginia various sums of money (he was ordered to pay $15 per week) for the support of his son, Danny Ray Burnette. The amounts he sent averaged about $300 per year. On September 30, 1959, Virginia married Louis Libby, who was employed by the Lone Star Cement Company as an engineer on a tugboat. About a year after Virginia married Louis Libby she became acquainted with Joseph A. Hoehn, a married man with grown children, and soon became his mistress. Virginia's mother, Hazel Whatley, knew of her extramarital *117 liaison with Hoehn. Soon after their relationship began, Hoehn made a steady practice of giving Virginia cash and checks. Louis Libby was apparently unaware of the relationship between Hoehn and Virginia. Hoehn was a businessman who operated the Hoehn Trading Center near Atmore, Alabama. He had personal accounts in the First National Bank of Atmore and the Bank of Atmore, and a corporate account in the name of Hoehn Trading Center in the Bank of Atmore. His wife found out about some of the checks he had given to Virginia and, in 1964, in an effort to conceal some of the payments, he persuaded Virginia to open an account in the name of "Dixie Premium Company," a nonexistent entity. Hoehn then caused checks made payable to Dixie Premium Company to be drawn on the Hoehn Trading Center account and delivered such checks to Virginia. She, in turn, cashed and deposited the money in various savings accounts mentioned later herein. In each of the years 1961 through 1964 Hoehn gave Virginia approximately $3,000. He also bought her an automobile in 1962 and later bought her a second automobile, which cost about $3,600. He arranged for Virginia to finance its purchase through the C.I.T. Credit *118 Corporation for 36 monthly payments of $102.97 each. Hoehn gave the money to Virginia, in checks or cash, and then she made the payments on the automobile. He bought her a fur stole for a Christmas present in the same manner, i.e., she financed it and he made the payments. In addition, she traveled as his companion on several trips to such places as New Orleans, Las Vegas, Nassau, Rio de Janeiro, Brazil, and Rome, Italy. From 1952 until 1960 Virginia sold Stanley Home Products, which consisted of mops, brooms, brushes and other items, both door-to-door and through a party plan. All of the wages which Louis Libby received from Lone Star Cement Company during the years 1959 through 1964 were reported on the Federal income tax returns petitioners filed for those taxable years. The total amounts of the wages for each of those years were as follows: Year
Amount
1959
$ 8,120.00
1960
8,385.00
1961
8,660.00
1962
8,905.00
1963
9,145.00
1964
9,482.39
During the years 1959 through 1964 Virginia owned realty located at Lot No. 1, Cleveland Fourth Addition to Saraland, Alabama, which was worth $8,400. On or about December 2, 1958, Virginia purchased a house *119 under construction at 917 Route No. 1, Saraland, Alabama, for about $3,000. She then completed that house, first rented it, and then sold it, to Mr. and Mrs. Bennie C. Dyess on April 5, 1960, on a vendor's lien deed for $12,500. The improvements Virginia made to the house she sold to Mr. and Mrs. Bennie C. Dyess cost her approximately $5,500. Mr. and Mrs. Dyess paid $800 down and agreed to pay $75 per month. The house burned in 1962. Virginia foreclosed on the property for default and she received $10,875.62 in settlement of the fire loss. This amount was deposited in savings account No. XXXX at the Home Savings and Loan Association of Mobile. On or about August 20, 1959, petitioners purchased a house on South Druid Drive, Mobile, Alabama, for $1,600 down and assumed a mortgage with an unpaid balance owing thereon at the time in the amount of $14,335.99. Petitioners lived in this house until they purchased the Plaza Motel and a house adjacent thereto in 1960 and moved into the house adjacent to the motel. From August 22 or 23, 1962, through and beyond December 31, 1964, petitioner rented the house on South Druid Drive, Mobile, Alabama, for $110 per month, which rent was paid *120 regularly by the tenant. At the time of petitioners' marriage on September 30, 1959, Louis Libby owned 20 acres of land in Baldwin County, Alabama, worth $4,000. On December 31, 1959, Louis Libby owned a mortgage on a tract of land in Baldwin County, Alabama, in the face amount of $6,000 that he had obtained from Oscar Fridolf Eskil Winberg on or about February 17, 1959, which mortgage was released on April 20, 1960. On December 31, 1959, Louis Libby owned church bonds in the face amount of $1,000. On December 31, 1959, Louis Libby held a note in the amount of $1,000 from Oscar Fridolf Eskil Winberg, secured by 1,000 Satsuma trees, payable 8 months from that date. On March 22, 1956, Louis Libby opened savings account No. XXXX at Home Savings and Loan Association, Mobile, Alabama. That account was closed on February 12, 1964. The balances in that account on the 31st of December in each of the years 1959 to 1963, inclusive, were as follows: Year
Balance
1959
$6,008.84
1960
218.27
1961
227.09
1962
237.42
1963
248.22
On October 5, 1956, Virginia opened savings account No. XXXX at Home Savings and Loan Association, Mobile, Alabama, in the name of *121 Virginia Whatley, P.O. Box 87, Chickasaw, Alabama. That account was closed on the books of Home Savings and Loan Association on January 2, 1964. The balances in that account on December 31st of each of the years 1959 to 1963, inclusive, were as follows: Year
Balance
1959
$13,212.38
1960
21,235.93
1961
30,788.74
1962
45,547.31
1963
18,182.84
On February 27, 1959, Virginia opened savings account No. XXXX at Home Savings and Loan Association, Mobile, Alabama, in the name of Miss Jean Whatley, P.O. Box 87, Chickasaw, Alabama. That account was closed on March 23, 1960. The balance in that account on December 31, 1959, was $657.05. On July 24, 1959, Virginia opened savings account No. XXXX at Mobile Federal Savings and Loan Association in the name of Mrs. Virginia Burnette, P.O. Box 87, Chickasaw, Alabama. That account was closed on January 22, 1964. The balances in that account on December 31st of each of the years 1959 to 1963, inclusive, were as follows: Year
Balance
1959
$ 203.33
1960
623.61
1961
1,271.65
1962
2,046.47
1963
2,553.19
On July 24, 1959, Virginia opened savings account No. XXXX at Mobile Federal Savings and *122 Loan Association in the name of Miss Jean Whatley, P.O. Box 87, Chickasaw, Alabama. That account was closed on January 22, 1964. The balances in that account on December 31st of each of the years 1959 to 1963, inclusive, were as follows: Year
Balance
1959
$ 203.33
1960
211.63
1961
839.54
1962
1,594.69
1963
2,080.85
On October 21, 1959, petitioners opened savings account No. 373 at the First Federal Savings and Loan Association, Mobile, Alabama. That savings account was closed on May 30, 1960. The balance in that account on December 31, 1959, was $829.93. In 1959, petitioners earned interest income in the total amount of $802.27 on various savings accounts they had at Home 918 Savings and Loan Association, Mobile, Alabama, Mobile Federal Savings and Loan Association, and First Federal Savings and Loan Association, Mobile, Alabama, although they reported only $352.40 in interest income from these savings and loan accounts on their Federal income tax return filed for the year 1959. Petitioners had cash on hand on December 31st in each of the years 1960 to 1963, inclusive as follows: Year
Amount
1960
$ 400.00
1961
600.00
1962
1,250.00
1963
1,000.00
*123 On February 17, 1960, petitioners purchased the Plaza Motel, Saraland, Alabama, and a stucco house immediately adjacent thereto from Mr. and Mrs. M. D. Price for $70,000. They continued to own and operate this motel from the date of purchase through the end of 1964. As a part of the down payment on the motel, Louis Libby's 20 acres of land in Baldwin County, Alabama, were deeded to the sellers. After purchasing the motel petitioners made improvements thereon in 1960 which cost $1,000 and additional improvements thereon in 1963 which cost another $1,000. On or about November 12, 1960, petitioners purchased an office building immediately adjacent to the Plaza Motel from Mr. and Mrs. M. D. Price for $5,200, largely by assuming an indebtedness of the Prices to the Mobile Savings and Loan Association, under that Association's loan account No. 494. When Virginia sold her house at Route No. 1, Saraland, Alabama, to Mr. and Mrs. Bennie C. Dyess on April 5, 1960, she secured a mortgage from them to that property. The balances owing to her on that mortgage on December 31st in each of the years 1960, 1961, and 1962 were as follows: Year
Balance
1960
$11,161.65
1961
10,106.69
1962
9,804.87
*124 On April 25, 1960, petitioners opened savings account No. X 7398 at First Federal Savings and Loan Association, Mobile, Alabama, in the name of Mr. Louis or Mrs. Virginia Libby, Box 138-A, Plaza Motel, Saraland, Alabama. The balances in that account on December 31st in each of the years 1960 to 1964, inclusive, were as follows: Year
Balance
1960
$1,152.65
1961
1,199.21
1962
384.65
1963
13.01
1964
13.59
On May 2, 1960, Virginia opened savings account No. X7304 at Merchants National Bank of Mobile, Alabama, in the name of Virginia W. Burnette Libby, P.O. Box 87, Chickasaw, Alabama. That account was closed on July 3, 1962. The balances in that account on December 31st in each of the years 1960 and 1961 were $648.46 and $1,267.49, respectively. During all or part of the year 1960 and during the years 1961, 1962 and 1963 petitioners had a checking account at Merchants National Bank of Mobile, Prichard, Alabama. The balances in that account on December 31st in each of the years 1960 to 1963 inclusive, were as follows: Year
Balance
1960
$ 87.31
1961
248.16
1962
79.92
1963
343.14
During all or part of the year 1960 and during *125 the years 1961 to 1964, inclusive, petitioners had a checking account in the name of the Plaza Motel, Box 138-A, Saraland, Alabama, at the American National Bank and Trust Company of Mobile, First Commercial Office, Chickasaw, Alabama. The balances in that account on December 31st in each of the years 1960 to 1964, inclusive, were as follows: Year
Balance
1960
$106.42
1961
51.09
1962
3.12
1963
0
1964
66.40
On January 27, 1961, Virginia opened savings account No. XXXX at Mobile Federal Savings and Loan Association in the name of Virginia Libby, as Legal Custodian for Danny Ray Burnette under the Alabama Uniform Gifts to Minors Act, P.O. Box 87, Chickasaw, Alabama. Virginia made one withdrawal from that account in 1964 in the amount of $219.71. The balances in that account on December 31st in each of the years 1961 to 1964, inclusive, were as follows: Year
Balance
1961
$ 414.12
1962
1,149.92
1963
1,615.82
1964
9,985.21
On July 7, 1961, Virginia purchased a one-half interest in an unimproved lot in 919 Imperial County, California, which she continued to own from the time of its purchase through December 31, 1964. The value *126 of her one-half interest in that lot was $2,995. On November 7, 1962, Virginia opened savings account No. XXXX at First Federal Savings and Loan Association in Mobile, Alabama, in the name of Master Danny Ray Burnette, [by] Mrs. Virginia Libby, Agent, P.O. Box 87, Chickasaw, Alabama. The balance in that account when it was closed on December 31, 1963, was $210.67. On November 27, 1962, Virginia opened savings account No. XXXX at First Federal Savings and Loan Association, Mobile, Alabama, in the name of Miss Vivian Whatley by Mrs. Virginia Libby, Agent, P.O. Box 87, Chickasaw, Alabama. The balance in that account when it was closed on December 31, 1963, was $209.89. On November 27, 1962, Virginia opened savings account No. XXXX at First Federal Savings and Loan Association, Mobile, Alabama, in the name of Miss Mary Whatley by Mrs. Virginia Libby, Agent, P.O. Box 87, Chickasaw, Alabama. The balance in that account when it was closed on December 31, 1963, was $209.89. On November 12, 1962, Virginia opened savings account No. X7383 at First Federal Savings and Loan Association, Mobile, Alabama, in the name of Mrs. Virginia Libby, P.O. Box 87, Chickasaw, Alabama. The balance *127 in that account when it was closed on December 31, 1963, was $210.67. On November 12, 1962, Virginia opened savings account No. X7384 at First Federal Savings and Loan Association, Mobile, Alabama, in the name of Miss Jean Whatley, P.O. Box 87, Chickasaw, Alabama. The balance in that account when it was closed on December 31, 1963, was $210.67. On December 31st in each of the years 1962, 1963 and 1964 Virginia had an inventory for her business, operating under the name of Virginia's Appliance Mart, worth the following amounts: Year
Amount
1962
$139.10
1963
301.88
1964
550.00
On December 31st in each of the years 1962, 1963 and 1964 Virginia owned an automobile which cost $3,600. On January 23, 1963, Virginia opened savings account No. XXXX at Home Savings and Loan Association, Mobile, Alabama, in the name of Virginia Whatley, Trustee for Jean Whatley, P.O. Box 87, Chickasaw, Alabama. That account was closed on January 2, 1964. The balance in that account on December 31, 1963, was $11,368.62. On January 2, 1963, Virginia opened savings account No. X7691 at First Federal Savings and Loan Association, Mobile, Alabama, in the name of Mrs. Virginia Whatley, *128 P.O. Box 87, Chickasaw, Alabama. The balance in that account when it was closed on December 31, 1963, was $209.10. On January 2, 1963, Virginia opened savings account No. X7692 at First Federal Savings and Loan Association, Mobile, Alabama, in the name of Mrs. Dale Whatley, P.O. Box 87, Chickasaw, Alabama. The balance in that account when it was closed on December 31, 1963, was $209.10. On January 10, 1963, Virginia opened savings account No. XXXX at Home Savings and Loan Association, Mobile, Alabama, in the name of Virginia Whatley, Trustee for Vivian Whatley, P.O. Box 87, Chickasaw, Alabama. That account was closed on January 2, 1964. The balance in that account on December 31, 1963, was $10,400. On January 10, 1963, Virginia opened savings account No. XXXX at Home Savings and Loan Association, Mobile, Alabama, in the name of Virginia Whatley, Trustee for Mary Whatley, P.O. Box 87, Chickasaw, Alabama. That account was closed on January 2, 1964. The balance in that account on December 31, 1963, was $10,000. On January 10, 1963, Virginia opened savings account No. XXXX at Home Savings and Loan Association, Mobile, Alabama, in the name of Virginia Whatley, Trustee for Danny *129 Ray Burnette, P.O. Box 87, Chickasaw, Alabama. That account was closed on January 2, 1964. The balance in that account on December 31, 1963, was $11,513.77. On January 25, 1963, Virginia opened savings account No. XXXX at Mobile Federal Savings and Loan Association, Mobile, Alabama, in the name of Vivian Whatley by Mrs. Virginia Libby as Trustee, P.O. Box 87, Chickasaw, Alabama. That account was closed on January 22, 1964. The balance in that account on December 31, 1963, was $412.82. On January 25, 1963, Virginia opened savings account No. XXXX at Mobile Federal Savings and Loan Association, Mobile, Alabama, in the name of Virginia Whatley by Mrs. Virginia Libby as Trustee, P.O. Box 87, Chickasaw, Alabama. That account was closed on January 22, 1964. The 920 balance in that account on December 31, 1963, was $412.82. On December 2, 1963, Virginia opened bank account No. XX-X62-21 at Merchants National Bank of Mobile, Alabama, in the name of Dixie Premium Company. The balances in that account on December 31st in each of the years 1963 and 1964 were $401 and $439.87, respectively. Virginia closed savings account Nos. XXXX, XXXX, XXXX and XXXX in Mobile Federal Savings and *130 Loan Association, Mobile, Alabama, on January 22, 1964, by transferring all funds in those accounts to savings account No. XXXX at the same Association. On December 31, 1963, Virginia opened savings account No. X9674 at First Federal Savings and Loan Association, Mobile, Alabama, in the name of Mrs. Virginia Libby as Legal Custodian of Master Danny Ray Burnette, a minor, under the Alabama Uniform Gifts to Minors Act, P.O. Box 87, Chickasaw, Alabama. At the same time, savings account Nos. XXXX, XXXX, XXXX, X7383, X7384, X7691 and X7692 at that Association were closed and the balances in all those accounts were deposited in savings account No. X9674. The balances in that account on December 31st in the years 1963 and 1964 were $1,469.99 and $1,569.99, respectively. During part of the year 1963 and all of the year 1964 Virginia had a checking account at the American National Bank and Trust Company, Mobile, Alabama, Chickasaw Office, in the name of Virginia's Appliance Mart, Highway 43, Saraland, Alabama. The balances in that account on December 31st of the years 1963 and 1964 were $3,328.40 and $84.64, respectively. On January 2, 1964, Virginia opened savings account No. 9131 at *131 Home Savings and Loan Association, Mobile, Alabama, in the name of Mrs. Virginia Libby, Legal Custodian for Danny Ray Burnette, under the Alabama Uniform Gifts to Minors Act, P.O. Box 87, Chickasaw, Alabama, with proceeds transferred from account Nos. XXXX, XXXX, XXXX, XXXX and XXXX with the same Association. The balance in that account on December 31, 1964, was $68,239.06. Petitioner withdrew $1,410.52 from that account on July 2, 1964, and $60,000 from that account on January 11, 1965. On February 12, 1964, petitioners opened savings account No. XXXX at Home Savings and Loan Association, Mobile, Alabama, in the name of Louis Libby by transferring the balance from account No. XXXX with the same Association to that account. The balance in that account on December 31, 1964, was $249.06. During the years 1959 to 1964, inclusive, Virginia was indebted to Home Savings and Loan Association of Mobile, Alabama, under loan account No. X-2667 in the name of Virginia Dell Whatley for money borrowed on June 28, 1955. That indebtedness was secured by realty she owned in Lot No. 1, Cleveland 4th Addition to Saraland, Alabama. The unpaid balances of that debt on December 31st of the years 1959 *132 to 1964, inclusive, were as follows: Year
Amount
1959
$ 5,862.78
1960
5,237.53
1961
4,573.74
1962
3,869.01
1963
3,120.79
1964
2,249.13
During the years 1959 through 1964 Virginia was indebted to Home Savings and Loan Association of Mobile, Alabama, under loan account No. X-3970 or XXXX, in the name of Virginia Dell Whatley, P.O. Box 87, Chickasaw, Alabama, for money borrowed on November 13, 1958. This loan account was secured by her realty in the Cleveland 4th Addition to Saraland, Alabama. The unpaid balances of that debt on December 31st of the years 1959 to 1964, inclusive, were as follows: Year
Amount
1959
$ 5,133.00
1960
4,771.15
1961
5,401.75
1962
5,056.46
1963
5,356.27
1964
5,008.18
During part of the year 1959 and during the years 1960 to 1964, inclusive, petitioners were indebted to Garber, Cook and Hulsey, Inc., Realty Mortgage Company, Birmingham, Alabama 35203, on a debt secured by their realty located on South Druid Drive, Mobile, Alabama. The unpaid balances of that debt on December 31st of the years 1959 to 1964, inclusive, were as follows: Year
Amount
1959
$14,257.84
1960
14,015.80
1961
13,762.04
1962
13,495.95
1963
13,216.94
1964
12,924.39
*133 On February 17, 1960, petitioners assumed an indebtedness of $55,000 to the Merchants National Bank, Mobile, Alabama, under loan account No. XXXX. That indebtedness 921 was secured by the Plaza Motel which they purchased in 1960. The unpaid balances of that debt on December 31st of the years 1960 to 1964, inclusive, were as follows: Year
Amount
1960
$ 48,606.67
1961
46,399.78
1962
44,057.21
1963
41,569.65
1964
38,929.21
During 1960 petitioners became indebted to Mobile Savings and Loan Association under their loan account No. 494. This was the indebtedness petitioners assumed when they purchased the office building adjacent to the Plaza Motel. The unpaid balances of that debt on December 31st of the years 1960 to 1964, inclusive, were as follows: Year
Amount
1960
$4,873.34
1961
4,395.10
1962
3,884.92
1963
3,340.08
1964
2,709.36
On July 6, 1960, Virginia, under the name of Virginia Whatley, borrowed $1,215.40 from the First Federal Savings and Loan Association, Mobile, Alabama, under loan account No. XXXX. On March 6, 1963, she borrowed an additional $1,184.50 from the same Association under their loan account No. XXXX. *134 The balances owing the First Federal Savings and Loan Association on both those loan accounts on December 31st of the years 1960 to 1964, inclusive, were as follows: Year
Amount
1960
$1,046.58
1961
641.46
1962
236.34
1963
888.40
1964
493.60
In purchasing her one-half undivided interest in realty in Imperial County, California, in 1961, Virginia became indebted to the Salt and Sea Development Company, Beverly Hills, California. The unpaid balances of that debt on December 31st of the years 1961 to 1964, inclusive, were as follows: Year
Amount
1961
$2,613.98
1962
2,265.52
1963
1,952.12
1964
1,577.88
On December 31, 1964, petitioners owed Beneficial Finance Corporation of Mobile, Alabama, a balance of $544. On December 31st of the years 1960 to 1964, inclusive, petitioners were entitled to a reserve for depreciation on their assets as follows: Year
Amount
1960
$ 1,800.00
1961
3,866.67
1962
6,121.42
1963
8,376.12
1964
10,630.82
During the years 1960 to 1964, inclusive, petitioners' total personal expenses were at least as follows: Year
Amount
1960
$4,621.57
1961
4,000.93
1962
5,199.92
1963
5,224.34
1964
5,014.47
*135 The books and records of Virginia, the Plaza Motel and Virginia's Appliance Mart for taxable years 1960 to 1964, inclusive, were inadequate to reflect correct taxable income. On January 30, 1964, petitioners signed a Form 872, Consent Fixing Period of Limitation Upon Assessment of Income and Profits Tax, pertaining to their taxable year 1961 extending the period for the assessment of income taxes due for that taxable year to December 31, 1966. They signed another Form 872 on October 29, 1966, pertaining to the same taxable year extending the period for assessment of said taxes to December 31, 1967. The notice of deficiency in this case was mailed to petitioners on December 26, 1967. Virginia never informed the internal revenue agents making the audit and investigation of her Federal income tax returns for the taxable years 1959 to 1964, inclusive, of the sources of any funds which she later claimed at the trial constituted nontaxable gifts. The Federal income tax returns filed by petitioners for the taxable years 1960 to 1963, inclusive, show no income tax liability. The return filed by them for the taxable year 1964 shows an income tax liability of only $459.06. Petitioners *136 reported no interest income on their 1960, 1961 and 1962 Federal income tax returns. The only interest income they reported on their 1963 and 1964 returns was interest from Home Savings and Loan Association, Mobile, Alabama, in the respective amounts of $9.50 and $10.84. They both had knowledge that interest income should be reported. On the returns Virginia filed in the name of her minor son, Danny Ray Burnette, for the taxable years 1963 and 1964 she 922 reported interest in the respective amounts of $1,535.35 and $3,420.54. The 1963 return was not filed before April 15, 1964, the date it was signed. In 1960 petitioners earned interest income in the amount of $1,222.89, none of which was reported on their Federal income tax return. In 1961 petitioners earned interest income in the amount of $1,833.20, none of which was reported on their Federal income tax return. In 1962 petitioners earned interest income in the amount of $2,571.24, none of which was reported on their Federal income tax return. In 1963 petitioners earned interest income in the amount of $2,926.24, of which $9.50 was reported on their Federal income tax return. In 1964 petitioners earned interest income *137 in the amount of $3,430.84, of which $10.84 was reported on their Federal income tax return. Petitioners reported some income from rentals in each of their taxable years 1960 to 1964, inclusive. They reported rental income on their house located on South Druid Drive, Mobile, Alabama, in each of the taxable years 1960 to 1964, inclusive, but understated the amount of this income in the years 1962, 1963 and 1964. Virginia failed to report any rental income on her realty located in the Cleveland 4th Addition to Saraland, Alabama, although at least one of her houses was rented during all or part of the years 1960 through 1964. The house on Route No. 1, Saraland, Alabama, that Virginia purchased from Mr. and Mrs. Obie Willis was rented to Mr. and Mrs. Bennie C. Dyess in 1960 before they purchased it from petitioner in April 1960. That rent was not reported on petitioners' 1960 return. When petitioners purchased the office building adjacent to the Plaza Motel from Mr. and Mrs. M. D. Price in November 1960 it was rented to the Eslava Real Estate and Insurance Company and continued to be rented to that company into 1961. No rental income from the building was reported in either 1960 or *138 1961. Respondent determined the unreported income of petitioners for the years 1959 through 1964 by the net worth plus nondeductible expenditures method. In the notice of deficiency dated December 26, 1967, respondent determined that petitioners understated their adjusted gross income for such years as follows: Year
Understatement ofAdjusted Gross Income
1959
$ 447.42
1960
12,790.78
1961
14,570.31
1962
25,802.15
1963
19,380.20
1964
8,084.79
During the years 1960 through 1964 petitioner Virginia Libby received nontaxable income from the following sources: Donor
Year
Amount
Grover C. Passmore
1960
$1,000
1961
1,000
1962
1,000
1963
1,000
1964
1,000
John A. Hoehn
1961
3,500
1962
4,000
1963
4,000
1964
3,500
Lamar Burnette
1960
300
1961
300
1962
300
1963
300
1964
300
Ultimate Findings 1. Petitioners had inadequate and incomplete books and records of their incomeproducing activities, particularly the Plaza Motel, for the years 1960 through 1964. 2. Petitioners substantially understated their taxable income for each of the years 1960 through 1964. 3. For each of the years 1959 *139 through 1964 a part of the underpayment of tax by the petitioners was due to fraud with intent to evade tax, and each of their Federal income tax returns for those years was a false and fraudulent return with intent to evade tax. Opinion Issue 1 - Determinations of Taxable Income In the absence of adequate books and records, respondent was justified in determining petitioners' tax liabilities for the years 1959 through 1964 by the net worth plus nondeductible expenditures method. See Holland v. United States, 348 U.S. 121 (1954); Cefalu v. Commissioner, 276 F. 2d 122 (C.A. 5, 1960); and Morris Lipsitz, 21 T.C. 917 (1954), affd. 220 F. 2d 871, (C.A. 4, 1955). Petitioners did not argue at trial or on brief that use of the net worth method was 923 unjustified under the circumstances of this case; nor, to use the words of their counsel, have they "seriously challenged the accuracy of the net worth increases in any major degree." [4] The main thrust of petitioners' attack is that substantial portions of the net worth increases resulted from nontaxable gifts which Virginia received from Grover C. Passmore and John A. Hoehn. *140 The evidence contained in this record in support of Virginia's claim that she received some $30,000 to $40,000 from Grover Cleveland Passmore as gifts during the years in controversy is indeed tenuous. Certainly the revelation of the alleged relationship [5] between Virginia and Passmore came as a complete surprise to respondent's agents and counsel. Although asked about possible nontaxable sources of income during the course of the investigation and audit of her tax returns, Virginia never at any time prior to the trial of this case revealed to representatives of the Internal Revenue Service that Passmore had given her any money. *141 This tends to cast serious doubt upon her vague, self-serving, inconsistent, exaggerated and somewhat incredible testimony. Nor do we have complete confidence in the credibility of Hazel Whatley's testimony. With Passmore dead, and with respondent's agents unable during the trial to check out their bizarre story, Virginia and her mother were free to go to great lengths in their testimony so long as they thought it unlikely to be impeached. At best, this record, to use a Churchillian phrase, presents "a riddle wrapped up in an enigma inside a dilemma." Respondent strongly urges us to find that Passmore gave Virginia absolutely nothing during the years in issue, while Virginia contends that we should find she received at least $30,000. On this record we are unwilling to accept the position urged by either party. While respondent's position is not entirely realistic, we doubt whether Virginia received the highly inflated amount of $6,000 each year from Passmore. Consequently, we have not made either the finding requested by respondent or the finding requested by petitioners because neither would be in accord with our consideration and view of the facts. Using our best judgment, based *142 on all the evidence, we have found that Virginia received gifts from Passmore amounting to $1,000 per year for each of the years 1960 through 1964. Cf. Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2, 1930); Baumgardner v. Commissioner, 251 F. 2d 311 (C.A. 9, 1957), affirming a Memorandum Opinion of this Court, David J. Pleason, 22 T.C. 361, 371 (1954), affd. 226 F. 2d 732 (C.A. 7, 1955); Michael Potson, 22 T.C. 912 (1954), affirmed sub. nom. Bodoglau v. Commissioner, 230 F. 2d 336 (C.A. 7, 1956); and Abraham Galant, 26 T.C. 354 (1956). Since Virginia kept no records of the amounts she received from Passmore and her testimony was quite vague and general, the situation reasonably calls for the exercise of practical judgment based on such meager evidence as the record discloses. *143 We view differently Virginia's claim that she received about $15,000 from Joseph Hoehn throughout the 1961-1964 period. We have her testimony, corroborated by Hoehn's and certain specific documentary evidence. Respondent places the credibility of Hoehn in issue and contends that he is "not worthy of belief in any respect." We disagree with respondent, even though Hoehn's testimony was somewhat obscure and in conflict with what he told the special agent during the investigation. It is true that in the signed statement given to respondent's agents Hoehn said he had "loaned" Virginia $15,000 which he changed two months later to read $8,000. Obviously at that time he was afraid that his own income tax returns were being investigated and he was trying to hide the real nature of the payments. We believe his testimony at the trial of this case more accurately reflected what actually happened. To be sure, what he said were 924 admissions against his interests and required some degree of candor. We do not question the modus vivendi of Virginia and Hoehn during this period. We think she was his mistress and he frequently gave her money and other things of value. Our findings of fact so *144 indicate. [6] Respondent complains about the lack of records and complete documentary evidence showing precisely every dollar Hoehn gave Virginia. But we are not too concerned because there is little likelihood that they were interested in "keeping books on romance." In short, we accept Hoehn's testimony that he made "gifts" to Virginia during the years 1961 through 1964. Petitioners have not attempted to establish the actual amount of receipts from the Plaza Motel during the years in issue. It is inconceivable that the operation of the motel, in which petitioners invested $70,000 in 1960, consistently resulted in the following substantial losses: Year
Loss Claimed
1960
$5,811.02
1961
5,909.76
1962
7,315.58
1963
9,328.20
1964
3,927.90 We are convinced from a review of the evidence herein that the Plaza Motel was a major source of petitioners' taxable income in the years 1960 through 1964. The regular deposits of varying amounts of money at frequent intervals in the *145 various savings accounts strongly suggest that receipts from the motel operation were being put into those accounts, all of which were subject to Virginia's unfettered command and control. Accordingly, on this issue, we sustain respondent's determinations subject to the modifications contained in our findings of fact. Cf. Cefalu v. Commissioner, supra.
Issue 2 - Additions to Tax under Section 6653(b) Petitioners contend that respondent has failed to prove fraud by clear and convincing evidence for any of the years 1959 through 1964 and therefore the additions to tax under section 6653(b) are inapplicable. Respondent counters with the contention that at least a part of the underpayment of tax for each year was due to fraud, and that he has met his burden of proof. See Carter v. Campbell, 264 F. 2d 930 (C.A. 5, 1959); and Ginsberg v. Commissioner, 271 F. 2d 511 (C.A. 5, 1959). It is clear, and we have found on the evidence presented, that petitioners substantially understated their taxable income over the 6-year period before us. The amounts are much greater than their reported adjusted gross income, which for the years 1960 through 1964 *146 was as follows: Year
Adjusted GrossIncome
1960
$1,964.31
1961
2,290.12
1962
1,895.15
1963
12.50
1964
5,740.06 It is now well established that in a tax fraud case "consistent failure to report substantial amounts of income over a number of years, standing alone, is effective evidence of fraudulent intent." Schwarzkopf v. Commissioner, 246 F. 2d 731, 734 (C.A. 3, 1957), affirming a Memorandum Opinion of this Court; Kurnick v. Commissioner, 232 F. 2d 678 (C.A. 6, 1956), affirming a Memorandum Opinion of this Court [Dec. 20,858(M)]; and Holland v. United States, supra. But here there are also present other "badges of fraud." Petitioners books and records were inadequate. And despite the lack of formal education, Virginia was knowledgeable about her business and personal affairs, albeit with flexible scruples. It is significant, we think, that there were sizeable specific omissions of interest income during the years when Virginia knew interest income should have been reported. The joint tax return for 1959 reported some interest income but not all of it. No interest income was reported on the 1960, 1961 and 1962 *147 returns. On the 1963 return interest income of $9.50 from the Home Savings and Loan Association was reported and on the 1964 return $10.84 was reported. During these years interest income in the following amounts was omitted from petitioners' Federal income tax returns: Year
Omitted InterestIncome
1959
$ 447.42
1960
1,222.89
1961
1,833.20
1962
2,571.24
1963
2,916.74
1964
3,420.00 925 It is true that Virginia filed Federal income tax returns for the years 1963 and 1964 in the name of her son, Danny Ray Burnette, on which she reported interest income in the respective amounts of $1,535.35 and $3,420.54. But we view these as acts of concealment in a deliberate attempt to underpay the taxes owed by her. See Coats v. United States, 258 F. Supp. 1 (E.D. Tex., 1966), T. G. Nicholson, 38 B.T.A. 190 (1938), and Charles B. Lang, T.C. Memo. 1961-134, holding that a deliberate diversion of a taxpayer's income to a third party for the purpose of underpaying his tax is fraudulent. In fact, there is a definite pattern of concealment reflected in the various ways the savings accounts were opened and maintained by Virginia. As *148 our findings show, there were accounts in the names of Virginia Whatley, Virginia Burnette, Virginia Libby, Jean Whatley, Mrs. Dale Whatley, and several others where Virginia was named as trustee, agent or custodian for herself, her son, her sister or her mother. All of these savings accounts were subject to the complete dominion and control of Virginia. She made substantially all the deposits from her funds and made withdrawals at will. Therefore, all interest credited to the accounts was taxable to petitioners. Cf. Corliss v. Bowers, 281 U.S. 376, 378 (1930); Dorothy V. Crane, 49 T.C. 85 (1967). Virginia's testimony that she did not know that interest income should have been reported until she was so advised by a lawyer, Mr. Tonsmiere, is not worthy of belief. She also testified that she did not report interest income because her husband did not know about the various savings accounts she had and, if she had reported such income, he would find out about those accounts via the information on their tax returns. This is implausible. It contradicts her testimony that she did not know she should report interest income in the first place. Petitioners deliberately *149 failed to report part of their rental income in each of the years 1960 through 1964. The 1960 tax return reports rental income on a "House, Mobile" in the amount of $770. No other rental income is reported thereon. This is rental of the house on Druid Drive for the portion of the year after petitioners moved to the Plaza Motel. The only rental income reported on the 1961 return is $1,320 from the rental of this house. In 1962 petitioners reported rental income from this house in the amount of $1,210 plus $900 rental from the office building. This is the building adjacent to the Plaza Motel which petitioners purchased in 1960. Each of their 1963 and 1964 returns reported rent of $1,200 from the Mobile house and $900 from the office building. Consequently, there is rental income reported on each return for the years 1960 to 1964, inclusive. Obviously petitioners were aware that rental income should be reported. Virginia admitted owning realty in Saraland with two four-room houses thereon. In none of the years 1960 through 1964 is any rent income reported from those houses. Mrs. Ishee and her deceased husband, Mr. Tew, rented one of those houses for four years beginning in August 1960, *150 paying rent of $60 to $65 a month for part of the time and $45 a month for the remainder of the time, some of the rent being paid in cash and some by check. Virginia testified that the rent from those houses and some house trailers on the property went to her mother. If so, it was gifts to her mother to the extent it was rents from property Virginia owned. The house she sold to Bennie Dyess was first rented to him in January 1960 until it was sold to him on April 5, 1960. No rental income was reported there-from. Petitioners reported rent income from the office building beginning in 1962. The office building was purchased in 1960. Virginia admitted renting it to a Mr. Eslava in that year. Yet petitioners reported no rental income from this building in either 1960 or 1961. The rent from the house on Druid Drive was reported but understated in the years 1962, 1963 and 1964. The rent on this house from the time a Mr. Albrecht rented it in August 1962 through the end of 1964 was paid by check. Rent that was paid by check appears to have been reported to a large extent, but rent that was largely paid by cash was not reported. All in all, we conclude on this record that what occurred herein *151 was part and parcel of a conscious and deliberate attempt to evade the payment of petitioners' tax liabilities for each of the years 1959 through 1964. See Cefalu v. Commissioner, supra; Merritt v. Commissioner, 301 F. 2d 484 (C.A. 5, 1962), affirming a Memorandum Opinion of this Court. Accordingly, we believe 926 respondent has met his burden of proving fraud by clear and convincing evidence. We do not know whether Louis Libby had knowledge of the various savings accounts maintained by Virginia or of her fraudulent acts. He did not appear at the trial, although Virginia's counsel apparently represents him. But his liability for the determined income tax deficiencies is based upon section 6013(d)(3) which provides for joint and several liability for the tax on the aggregate income where a husband and wife elect to file a joint return. The joint and several liability of spouses on a joint return also applies to civil fraud penalties despite the innocence or lack of knowledge on the part of the wife or the husband. See W. L. Kann, 18 T.C. 1032 (1952), affirmed 210 F. 2d 247 (C.A. 3, 1953), certiorari denied 347 U.S. 967; *152 Myrna S. Howell, 10 T.C. 859 (1948), aff'd 175 F. 2d 240 (C.A. 6, 1949); Dora S. Hughes, 26 T.C. 23 (1956); Lawrence Sunbrock, 48 T.C. 55 (1967); and Michael Pendola, 50 T.C. 509, 521 (1968). Issue 3 - Statute of Limitations Having determined that a part of the underpayment of tax in each of the years 1959 and 1960 was due to fraud with intent to evade tax, it follows that the assessment of deficiencies for those years is not barred by the statute of limitations. See section 6501(c)(1) of the Code. The year 1961 is open for assessment by waiver. To reflect the conclusions reached herein, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. Hazel testified that she had illicit relations with Passmore and that he, not Whatley, fathered Virginia. Hazel also testified that she told Virginia in 1946 that her father was Passmore, although at that time, and until 1948, Hazel was still married to and lived with Randolph Whatley. ↩
3. Virginia testified that when Passmore had a heart attack in the summer of 1964 she went to Montgomery and took care of him. Notes on envelopes purportedly signed by Passmore during such period refer to Virginia as his "nurse" or "housekeeper." Mrs. Passmore was then dead.↩
4. Respondent concedes that his net worth computation, set forth in Exhibit A attached to the notice of deficiency and in evidence, is not completely correct. But the very nature of a determination of unreported income by an indirect method precludes the likelihood of such computation being mathematically precise, Schroeder v. Commissioner, 291 F. 2d 649 (C.A. 8, 1961), and, although part of the determination is wrong, this does not destroy its presumption of correctness. Webb v. Commissioner, 394 F. 2d 366↩ (C.A. 5, 1968).
5. We need not determine in this proceeding the true "relationship" of Passmore and Virginia. Alabama law confers legitimacy upon children born in wedlock when access of the husband at the time of conception was not impossible, Arthur v. Arthur, 77 So. 2d 477 (Sup. Ct. Ala., 1955), and the presumption of legitimacy can only be overcome by the highest and strongest proof. Franks v. State, 161 So. 549↩. Petitioners have not presented the required strong proof necessary to rebut the presumption. However, suffice it to say, we think it was at least a friendly, affectionate relationship.
6. We acknowledge that we have some reservation about our finding that the amounts Virginia received from Hoehn were "gifts," but compare Greta Starks, T.C. Memo. 1966-134↩.